# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00424-CR
NO. 03-07-00425-CR

**Barney Burroughs, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NOS. D-1-DC-06-205526 & D-1-DC-06-205527,
HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In two cases consolidated for trial, the district court convicted Barney Burroughs of the offenses of criminal trespass and retaliation. *See* Tex. Penal Code Ann. §§ 30.05(a), 36.06(a)(1)(B) (West Supp. 2007). Punishment was assessed at one year's imprisonment for the offense of criminal trespass and three years' imprisonment for the offense of retaliation. In a single issue on appeal, Burroughs challenges the legal and factual sufficiency of the evidence supporting the retaliation conviction. We will affirm the judgments.

## BACKGROUND

The district court heard evidence that, on the night of October 2, 2006, at approximately 11:00 or 11:30 p.m., Jay Presley was awakened by the sound of "honking and yelling" outside his house. Presley testified that the noise was coming from the residence of his next door

neighbors, Brad and Amy Rogans. Under the impression that the Rogans were not at home that night, Presley went outside to confront whoever was making the noise. He did not want the noise to awaken his wife and eight-year-old son. Presley testified that he did not intend to do anything other than tell the person to leave.

When Presley went outside, he encountered Burroughs. According to Presley, Burroughs "was very rattled. . . . As I walked up to him, he began walking toward me at a brisk rate. We met just a few feet from the gate where he was trying to make entry [into the neighbors' yard]." Presley testified that he could smell the odor of alcohol on Burroughs and thought that he might be intoxicated. Presley explained to Burroughs that he was waking up his family and that he shouldn't be there. Presley testified that Burroughs refused to leave: "He said he wasn't going to go anywhere, that he had driven 2000 miles to get there to see Brad, he wasn't going to go anywhere." In response, Presley told Burroughs that if he did not leave, he would call the police. At this point, Presley testified, Burroughs kicked him in the groin, and a fight ensued as Presley tried to get away from Burroughs. According to Presley, Burroughs was swinging at Presley using his arms, while Presley took off his belt and started swinging it at Burroughs. Presley testified that he struck Burroughs in the face with his belt and drew blood, causing Burroughs to remark, "Now you did it, mother-f*****." Burroughs turned and ran to his car, while Presley ran inside his house, dialed 911, and went to his bedroom to retrieve his gun from his safe. As Presley did so, he heard "a very, very loud banging on the door." Presley explained,

> The banging just kept getting louder and louder and it literally sounded like the side of the house was going to come off. The 911 operator was talking to me trying to get me to calm down. I was telling her he's banging on the house and I was trying to get the safe open at the same time. About the time I was looking for the last number I realized it got really quiet. I looked around the corner and he was in the house.

Presley testified that Burroughs was standing inside the kitchen, holding his hands up, and screaming, "[W]here are the cops now, mother-f*****, what are you going to do now." Then, Burroughs rushed toward Presley, saying, "I'm going to kill you." Burroughs collided with Presley in the hallway, and the two resumed fighting. As the two men struggled, Presley's wife, Judy, who had been standing by her husband's side, began hitting Burroughs with a suitcase. Presley testified that the fight ended up in the kitchen, where Presley managed to grab a hold of Burroughs and punch him in the face repeatedly. Eventually, Presley explained, he rendered Burroughs unconscious.

Presley testified that Burroughs regained consciousness as the police were arriving, made a comment to Presley and his wife that they were "going to die," stood up, and "staggered out the door." As Burroughs approached the police outside, he pointed toward Presley, told the police that Presley had just assaulted him, and collapsed on the ground, where he remained until an ambulance arrived. As the paramedics were tending to Burroughs, Presley explained to the police what had happened. Presley testified that before Burroughs was taken away, he again threatened Presley: "As he was laying down, he turned his head over and looked at me and said, 'I'm coming back to kill you.'"

Presley's wife, Judy, testified about her recollection of what happened that night. Consistent with her husband's testimony, she recounted that, after Burroughs regained consciousness on their kitchen floor, Burroughs told her that they were "going to die."

One of the police officers who arrived at the scene, Officer Jonathan LaBoard of the Austin Police Department, also testified. Officer LaBoard testified that as Burroughs was being

3

treated by EMS, he informed Burroughs that he was going to be placed under arrest. LaBoard also explained that as Burroughs was being wheeled away to the ambulance, Burroughs pointed at Presley, looked directly at him, and said, "I'm going to come back and shoot you, mother-f*****." On cross-examination, LaBoard explained that he was certain Burroughs said those words because those were the words he wrote in his report on the night of the incident.

Brad and Amy Rogans both testified briefly for the defense. They testified that they were at their house that night but did not observe what actually happened. Both also testified that they had known Burroughs for years and that they did not know him to be a violent person.

Finally, Burroughs testified. Burroughs described Presley as the aggressor during the initial struggle outside the house. According to Burroughs, he was defending himself from Presley's assault. Burroughs testified that, after Presley ran back into his house, Burroughs was "bleeding real bad" and realized that he needed medical attention. According to Burroughs, his intent in entering Presley's house was merely "to get help." When asked what he told Presley when he entered the house, Burroughs testified, "I said something like where is the cops, where is the cops. Then I said, if you are calling the cops, call me an ambulance." After that, Burroughs testified, "it's like somebody turned off a light switch." The next thing Burroughs remembered was "stumbling out of [Presley's] door." Burroughs testified that he did not remember making the threatening statement outside Presley's house that Presley and Officer LaBoard claimed he had made: "As far as I remember, I didn't threaten anybody." Burroughs admitted to being at fault for entering Presley's house without permission, but he denied intending to start a fight. In Burroughs's words, "I just needed help. I was bleeding so bad."

4

On cross-examination, when Burroughs was asked if he was drunk on the night of the incident, Burroughs testified, "I wouldn't say drunk; I would say I was feeling good." When asked if he might not have a clear and accurate recollection of events that night because he was either intoxicated or "feeling good," Burroughs testified, "It is possible."

The district court found Burroughs guilty of the offenses of criminal trespass and retaliation. The district court sentenced Burroughs to one year's imprisonment for the offense of criminal trespass and three years' imprisonment for the offense of retaliation, with the sentences to run concurrently. This appeal followed.

**STANDARD OF REVIEW**

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); *Shams v. State*, 195 S.W.3d 346, 347 (Tex. App.—Austin 2006, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In a factual sufficiency review, we view the evidence in a neutral light and ask whether a trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *see also Wooley v. State*, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. 2008) (holding that factual sufficiency, like legal sufficiency, should be measured "by the elements of the offense as defined by a hypothetically correct jury charge"). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id.* at 415. "The verdict may be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Grotti v. State*, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 761, at *13 (Tex. Crim. App. 2008) (citing *Watson*, 204 S.W.3d at 414-17). We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the trial court's verdict. *Watson*, 204 S.W.3d at 417.

**ANALYSIS**

In his sole point of error, Burroughs asserts that the evidence is insufficient to support his conviction for retaliation. A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a person who has reported or who the actor knows intends to report the occurrence of a crime. *See* Tex. Penal Code Ann. § 36.06(a)(1)(B). According to Burroughs, there is insufficient evidence that the threat "was made in retaliation for or on account of Jay Presley

6

reporting the occurrence of a crime." Rather, Burroughs claims, "the threat was most likely made in response to the beating Appellant received at the hands of Mr. Presley."

Presley testified that Burroughs kicked him in the groin immediately after he told Burroughs that he was going to call the police. A rational trier of fact could infer from this evidence that Burroughs's initial assault was in retaliation for Presley's intent to report a crime. Burroughs claims that, at that point, there was no crime for Presley to report. However, the record reflects that Presley believed Burroughs was creating a disturbance outside his residence late at night by "honking and yelling" and that Burroughs was possibly intoxicated. Therefore, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could conclude that Burroughs assaulted Presley in retaliation for Presley's intent to call the police and report that Burroughs was committing either disorderly conduct or public intoxication. *See* Tex. Penal Code Ann. §§ 42.01(a)(5), 49.02(a) (West Supp. 2007).

Furthermore, the evidence shows additional actions committed by Burroughs that a rational trier of fact could infer were in retaliation for Presley calling the police. First, Presley testified that when Burroughs entered Presley's residence, he told Presley, "[W]here are the cops now, mother-f*****, what are you going to do now." Then, according to Presley, Burroughs assaulted him again, telling Presley, "I'm going to kill you." Second, when Burroughs regained consciousness following the fight in the kitchen with Presley, he told Presley and his wife that they were "going to die." All of this occurred after Presley had called 911 and reported Burroughs's criminal activity. Finally, after the police arrived and Officer LaBoard informed Burroughs that he

7

was under arrest, Burroughs turned to Presley and told him, "I'm going to come back and shoot you, mother-f*****." This threat was made after Presley had given a statement to the police.

Viewing the above evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could find, beyond a reasonable doubt, that Burroughs intentionally or knowingly harmed or threatened Presley by an unlawful act in retaliation for or on account of Presley's status as a person who had reported or who Burroughs knew intended to report the occurrence of a crime. Thus, the evidence is legally sufficient to support Burroughs's retaliation conviction. *See Stewart v. State*, 137 S.W.3d 184, 187-88 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (explaining how retaliatory intent may be supported by circumstantial evidence).

When considering the evidence in a neutral light, we also conclude that the evidence is factually sufficient to support Burroughs's conviction. Burroughs testified that Presley assaulted him, that he entered Presley's residence merely "to get help," and that he did not remember "threatening anybody." However, he also testified that "it was possible" that he did not have a clear and accurate recollection of what happened that night. In contrast to Burroughs's testimony, Presley's recollection of what happened that night, including his account of the threatening statements that Burroughs had made, was supported by the testimony of other witnesses. We cannot say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the district court's verdict.

We overrule Burroughs's sole issue on appeal.

8

**CONCLUSION**

We affirm the judgments of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   August 13, 2008

Do Not Publish