IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2010

## KATHY D. PARTEE v. JAIME VASQUEZ, M.D.

**Appeal from the Circuit Court for Davidson County**
**No. 08C2702     Thomas W. Brothers, Judge**

**No. M2009-01287-COA-R3-CV - Filed January 5, 2011**

A woman who suffered prolonged bleeding, pain and disabling injury after gynecological surgery filed a *pro se* malpractice suit against the doctor who performed the surgery. The defendant filed a motion for summary judgment, accompanied by an affidavit in which he testified that in his treatment of the plaintiff he complied at all times with the relevant standard of acceptable professional practice. Unfortunately for the plaintiff, she was unable to find an expert witness to controvert that affidavit. The trial court granted the plaintiff several continuances to give her the opportunity to procure representation and expert testimony, but when she was unable to do so, the trial court granted the defendant's motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Kathy D. Partee, Oak Grove, Kentucky, Pro Se.

Thomas A. Wiseman III, James C. Sperring, Nashville, Tennessee, for the appellee, Jaime Vasquez, M.D.

## OPINION

### I.  A SURGICAL PROCEDURE AND ITS AFTERMATH

On July 6, 2007, Ms. Kathy Partee presented to the office of Dr. Jaime Vasquez with complaints which included fibroids, abnormal vaginal bleeding, and pelvic pain. Ms. Partee and Dr. Vasquez discussed several options to address her problems. Ms. Partee told Dr. Vasquez that she did not want a hysterectomy, so he suggested a surgical procedure called

a myomectomy, which is designed to remove fibroids from the uterus without removing the uterus itself.

Ms. Partee returned to the office of Dr. Vasquez on August 15, 2007 for further consultation.[1] According to Dr. Vasquez, he discussed non-surgical options with Ms. Partee at this consultation, as well as the potential risks of surgery, and she gave informed consent to the myomectomy. According to Ms. Partee's complaint, Dr. Vasquez told her he had done several of these surgeries, and that he could do it "with no problem."

On August 22, 2007, Dr. Vasquez performed the agreed-upon surgery under general anesthesia. His surgical notes state that he surgically excised fifteen fibroids from Ms. Partee's uterus, with a cumulative weight of about 250 grams. Dr. Vasquez reported that blood loss was minimal and that there were no complications. Ms. Partee was taken to the Post-Anesthesia Care Unit in stable condition with normal vital signs.

Ms. Partee returned to Dr. Vasquez' office for a post-operative examination on September 5, and he observed that she was recovering well from her surgery. Unfortunately for Ms. Partee, her condition subsequently took a sharp turn for the worse. At a follow-up appointment on September 17, 2007, she complained of abdominal pain, pelvic pain, pain on urination, and symptoms of fatigue, malaise and sleeplessness. Dr. Vasquez prescribed medication and referred her to another physician for her fatigue and related symptoms.

Ms. Partee's condition became even worse over the next two days. She reports that she called Dr. Vasquez' office on September 19, 2007 and left a message that she was experiencing profuse bleeding and severe abdominal pain. When he did not return her call within the hour, she went to Baptist Hospital, where she was admitted with a provisional diagnosis of postoperative ileus. In his affidavit, Dr. Vasquez describes that condition as "a motility disorder that is essentially a mechanical bowel obstruction, and it is a temporary paralysis of a portion of the intestines that typically occurs after abdominal surgery."

Ms. Partee was treated at the hospital and underwent several diagnostic procedures including a CT scan. The radiologists reported that no abdominal or pelvic pathology could be found in the scan, other than a small fibroid that remained in the uterus, which could not be removed because of its location. Dr. Vasquez stated that he consulted other physicians to assist in Ms. Partee's care during her hospital stay, that her symptoms waned, and that after a week of treatment she was discharged from the hospital.

---

[1]Both the affidavit of Dr. Vasquez and his brief on appeal mistakenly declare that this follow-up consultation occurred on April 15, 2007, an obvious impossibility since the same documents state that the initial consultation occurred on July 6, 2007.

Ms. Partee returned to Dr. Vasquez' office for a scheduled appointment on October 4, 2007, during which she again reported uterine bleeding and other symptoms. Dr. Vasquez prescribed medication and recommended that she return to his office if her symptoms continued. According to Dr. Vasquez, Ms. Partee called his office several times after that and he asked her to come in, but she did not do so. Finally, she did come to his office on November 15, 2007.

Dr. Vasquez testified that during that appointment, he advised her to see other physicians to manage her ileus, but that she declined. He further claimed that she rejected his advice and his suggestions as to her post-operative care. He stated that "I also learned she was being treated by other physicians for her symptoms though she refused to give me their names.[2] On this date, Ms. Partee discharged me as her physician and I have had no further contact with her."

## II. LEGAL PROCEEDINGS

On August 18, 2008, Kathy Partee filed a *pro se* hand-written complaint in the Circuit Court of Davidson County.[3] Her complaint recites in detail all the adverse physical effects she endured after her myomectomy, both while she was under the medical care of Dr. Vasquez and after she discharged him. She also alleged that her continuing problems prevent her from performing many of her normal daily activities. She claimed that Dr. Vasquez failed to properly treat her, that he refused to administer proper treatment, and that he did not comply with the recognized standard of acceptable practice. She accordingly asked the court to compensate her for her pain and suffering, for emotional distress, and for the time her husband had to take time off work because of her problems.

On September 24, 2008 Dr. Vasquez filed an answer in which he stated that he and the other doctors who participated in Ms. Partee's care appropriately treated her post-operative ileus. On October 31, 2008, he filed a motion for summary judgment, accompanied by his affidavit. He testified that he is a gynecologist who is board certified by the American Board of Obstetrics and Gynecology, and he described in detail his interactions with, and medical treatment of Ms. Partee. Fifty-three pages of medical and hospital records relating to her course of treatment were attached as an exhibit to his affidavit. He also filed a

---

[2]Medical records that were introduced as an exhibit to Dr. Vasquez' affidavit show that Ms. Partee was admitted to Gateway Hospital in Clarksville on October 20, 2007, and was discharged a week later.

[3]For some unaccountable reason, Ms. Partee's complaint and some of her other filings were hand-written on a form furnished by the United States District Court for the Middle District of Tennessee, with a heading that bears the name of that federal court. The complaint was filed in state court, however.

Statement of Undisputed Facts. *See* Tenn. R. Civ. P. 56.03 Ms. Partee did not file a response to the motion for summary judgment, nor did she respond to the Statement of Undisputed Facts.

For the purposes of this appeal, the most critical part of Dr. Vasquez' affidavit is his declaration that in his treatment of Ms. Partee, including surgery, pre-operative and post-operative care, he at all times complied with the recognized standard of acceptable professional practice applicable to a gynecologist practicing that specialty of medicine in Nashville, Tennessee. When a defendant doctor in a malpractice case has sworn that he complied with the relevant standard of care, the burden shifts to the plaintiff to present expert testimony to controvert that assertion. *Bowman v. Henard,* 547 S.W.2d 527, 531 (Tenn. 1977).

The defendant's motion for summary judgment was scheduled to be heard in January of 2009. However, Ms. Partee filed a motion on November 18, 2008 asking for a ninety day continuance to enable her to secure legal representation. She filed another motion for an extension of time on November 21, 2008 , specifically asking the court to hear the summary judgment motion on April 3, 2009. On December 19, 2008, she filed yet another motion for an extension of time asking to be allowed "at least 90 days before the hearing is heard to get representation."

On February 13, 2009, "out of an abundance of caution," the trial court continued the motion for summary judgment until April 24, 2009, "thereby allowing Plaintiff time to locate counsel and/or respond to the Motion for Summary Judgment." On April 15, 2009, Ms. Partee filed another motion for an extension of time, asserting that her medical records were in the hands of attorneys who might be taking her case, and she asked for "fifteen or thirty more days"to allow them to make a decision.

The hearing on the summary judgment motion was finally conducted on May 1, 2009. Ms. Partee appeared *pro se*, and Dr. Vasquez appeared through counsel. Ms. Partee told the court that she was continuing her search for an attorney to enter an appearance on her behalf. The court explained to her that a good deal of time had passed since the original filing of the motion for summary judgment, that the court had already granted her an extension, and that the defendant was entitled to have his motion ruled upon in a timely manner.

In its order of May 8, 2009, the trial court stated that there was no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law. Nonetheless, the court awarded Ms. Partee one more extension of time, by granting the defendant's motion for summary judgment on a conditional basis. The court instructed Dr. Vasquez' attorney to prepare an order granting his client summary judgment, to be entered without need for

further hearing if Ms. Partee failed to enter a notice of appearance by counsel on her behalf by 4:00 p.m. on May 22, 2009. If, however, such a notice of appearance was entered by the stated deadline, the court declared that it would conduct another hearing on the motion for summary judgment on June 5, 2009.

Ms. Partee did not file a notice of appearance by the deadline, nor did she file an affidavit setting forth testimony sufficient to demonstrate that there is a genuine issue of material fact in this case. The court accordingly granted summary judgment to Dr. Vasquez. This appeal followed.

### III. ANALYSIS

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin*, 271 S.W.3d at 83; *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008).

If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin*, 271 S.W.3d at 84; *Hannan*, 270 S.W.3d at 5; *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215). If, and only if, the moving party successfully negates an essential element of the nonmoving party's claim or demonstrates the nonmoving party's inability to prove an essential element at trial, the burden shifts to the non-moving party to at least create a dispute of fact as to that element. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 7 (discussing *McCarley*).

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Tenn. R. Civ. P. 56.06. *See also Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

In her complaint, Ms. Partee claimed that in treating her, Dr. Vasquez failed to comply "with the recognized standard of acceptable practice," and that she suffered injury as a result. Dr. Vasquez testified by affidavit that in treating Ms. Partee, he had complied with the recognized standard of acceptable professional practice applicable to a gynecologist in Nashville, Tennessee. He thereby triggered her obligation under Tenn. R. Civ. P. 56.06. to present appropriate testimony to refute his affidavit.

An action against a physician for injuries arising from negligent medical care is an action for medical malpractice. Such actions are controlled by Tenn. Code Ann. § 29-26-115, which, while based upon the common law elements of negligence, sets out special requirements of proof which must be met in order to establish a malpractice claim. *See Gunter v. Lab. Corp. of America,* 121 S.W.3d 636, 639 (Tenn. 2003); *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). Every one of these elements must be proved by expert testimony (Tenn. Code Ann. § 29-26-115(b)). *Bowman v. Henard,* 547 S.W.2d at 531.

Tennessee Code Annotated § 29-26-115(a) places upon the party claiming that malpractice occurred the burden of proving the recognized standard of professional care in the specialty practiced by the defendant; that the defendant failed to act in accordance with that standard; and that as a proximate result of the defendant's act or omission, the claimant suffered an injury which otherwise would not have occurred. *Gunter v. Lab. Corp. of America,* 121 S.W.3d at 140; *Moon v. St. Thomas Hospital*, 983 S.W3d 225, 229 (Tenn. 1998).

In order to testify as an expert witness under Tenn. Code Ann. § 29-26-115(b) the proffered witness must be a health care professional licensed to practice in the state of Tennessee or a contiguous state, in a profession or specialty "which would make that person's expert testimony relevant to the issues in the case and had practiced the profession or specialty in one (1) of those states during the year preceding the date that the alleged injury

occurred." Tenn. Code Ann. § 29-26-115(b).[4] Without such expert testimony, there is no chance of success in a medical malpractice suit.

As we stated above, Dr. Vasquez testified that in treating Ms. Partee, he had complied with the recognized standard of acceptable professional practice applicable to a gynecologist in Nashville, Tennessee. When a defendant doctor in a malpractice case has sworn that he complied with the relevant standard of care, the burden shifts to the plaintiff to present expert testimony to controvert that assertion. If the plaintiff cannot meet that burden, then the defendant doctor's affidavit constitutes a sufficient basis for dismissal of the action on summary judgment. *Bowman v. Henard,* 547 S.W.2d at 531; *Fitts v. Arms*, 137 S.W.3d 187, 190 (Tenn. Ct. App. 2003); *Smith v. Graves*, 672 S.W.2d 787, 790 (Tenn. Ct. App. 1984).

The trial court recognized that Ms. Partee would have a hard time finding an expert competent under Tenn. Code Ann. § 29-26-115(b) to execute an affidavit to refute the affidavit of Dr. Vasquez and that she would need legal representation in order to succeed. The court accordingly granted Ms. Partee's motion for continuance, by delaying the scheduled summary judgment hearing from January to April of 2009. When Ms. Partee appeared at the hearing and pled for more time to find an attorney, the trial court held back the entry of a summary judgment in order to give her the time she requested. In total, Ms. Partee was allowed more than six months to locate counsel and/or respond to the motion for summary judgment.

Parties who represent themselves are entitled to fair and equal treatment by the courts, and the courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. *Hessmer v. Hessmer*, 138 S.W.3d 901 (Tenn. Ct. App. 2003); *Whitaker v. Whirlpool Corp*., 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc*., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts accordingly give *pro se* litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. *Whitaker v. Whirlpool Corp*., 32 S.W.3d at 227; *Paehler v. Union Planters Nat'l Bank, Inc*., 971 S.W.2d at 397; *Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).

---

[4]Our legislature imposed new requirements on parties to medical malpractice cases in 2008 and 2009. Tenn. Code Ann. § 29-26-121 now requires a plaintiff to give notice of the potential malpractice claim to the health care provider who is to be named the defendant at least 60 days prior to filing suit. Tenn. Code Ann. § 29-26-122 requires the plaintiff or plaintiff's counsel to obtain a signed written certificate of a competent medical expert, stating that there is a good faith basis to maintain the action consistent with Tenn. Code Ann. § 29-26-115. The certificate of good faith must be filed with the complaint. Failure to file such a certificate can result in dismissal of the complaint with prejudice. [2008 Acts, ch. 919; 2009 Acts ch. 425]. The timing of Ms. Partee's complaint of August 18, 2008 makes the two statutes ineffective as to her claim.

However, the courts must also be mindful of the boundary between fairness to a *pro se* litigant and unfairness to the *pro se* litigant's adversary. Thus, the courts must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995). Accordingly, despite her *pro se* status, Ms. Partee was not excused from filing a properly supported response to Dr. Vasquez' motion for summary judgment. Since she did not do so, she has not created a dispute of material fact. The trial court did not err in holding that Dr. Vasquez is entitled to summary judgment as a matter of law.

## IV.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Kathy Partee.

_____
PATRICIA J. COTTRELL, JUDGE