

# NUMBER 13-13-00288-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| TIMOTHY WAYNE DODDS, | **Appellant,** |
| v. | |
| THE STATE OF TEXAS, | **Appellee.** |

## On appeal from the 24th District Court of DeWitt County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Timothy Wayne Dodds appeals his conviction of retaliation, a third-degree felony. *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(A), (c) (West, Westlaw through 2013 3d C.S.). A jury found appellant guilty and assessed punishment at two years' imprisonment, the sentence to be suspended with appellant being placed on community-

supervision probation for a period of two years. By three issues, appellant argues: (1) the evidence was insufficient; (2) the trial court improperly excluded an impeachment witness; and (3) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

Two of appellant's grandchildren lived with their mother Adrianna Zuniga[1] and her boyfriend Antonio M. Longoria III. Zuniga is appellant's son's ex-wife, and she had custody of their two children—appellant's grandchildren. Zuniga's and Longoria's neighbor was Police Sergeant Ernesto Garcia Jr.[2]

On the night of the alleged offense, a police dispatcher called Sergeant Garcia at home and asked him to see if Zuniga and Longoria had left children alone at their house. The dispatcher was responding to a "welfare call" from someone concerned that children were left at home alone. Longoria and Zuniga were at home when Sergeant Garcia arrived. While Sergeant Garcia was at their house, the police dispatcher called him and told him Zuniga's ex-husband (appellant's son), "was en route to kill [Longoria]."

Zuniga called a friend, Alex Campbell, and asked him to "please come get the kids because [she] didn't want the kids there while the cops were there, or [she] didn't know what his intentions were, being the father, when he got to [her] house . . . ." Campbell arrived, but appellant and his wife arrived at about the same time. Appellant's wife approached the house, and Sergeant Garcia remembered her "yelling in an aggressive

---

[1] By the time of trial, Adrianna Zuniga married Antonio M. Longoria III and changed her last name to Longoria. We refer to her as Adrianna Zuniga because the parties at trial and on appeal use that name.

[2] At trial and in the briefs, Sergeant Ernesto Garcia Jr. is called Sergeant Garcia. We use that name for consistency.

2

voice in reference to wanting to see the children." Appellant exited his vehicle and approached the house.

Sergeant Garcia identified himself to appellant as a police officer and told him to "stop right there." Appellant allegedly responded, "I don't care who you are," pushed past him, and began arguing with Zuniga. Sergeant Garcia observed that "[a]ggression came from" appellant. Zuniga began crying. She and Longoria repeatedly asked appellant to leave. Sergeant Garcia testified that he told appellant seven or eight times he was a police sergeant and "approximately five times" to leave or he would arrest him.

Sergeant Garcia heard Campbell say something that made appellant "tense up." Sergeant Garcia saw appellant walk toward Campbell with clenched fists and "ready to fight," so Sergeant Garcia pointed a Taser at appellant and yelled, "Stop, Police, Taser. Stop, Police, Taser." According to Sergeant Garcia, "He stopped. He looked at me, he grinned, took another step towards [Campbell] and I yelled a third time, 'Stop, Police, Taser.'"

Sergeant Garcia "[p]ulled the [Taser] trigger and two needlelike projectiles eject[ed] from the [T]aser handle." One of the projectiles "went through [appellant's] shirt" but "did not make contact" with his body. Sergeant Garcia testified that appellant "stopped, looked down at them, looked at me, looked at [Campbell], took a step" towards Campbell. Appellant, however, then turned to Sergeant Garcia and walked towards him with clenched fists and grinning—"[h]e was still red and he was still showing his teeth." Sergeant Garcia considered appellant's advance on him with clenched fists to be a threat. Sergeant Garcia recalled that as appellant advanced, he "stopped, looked, grinned and

3

reached down," and grabbed the Taser wires, which closed the Taser's circuit "and the [T]aser took effect on him."

One of Zuniga's and Longoria's neighbors, Robert Ludwick, saw the altercation. He confirmed that Sergeant Garcia told appellant three times that he was a police sergeant and repeatedly asked appellant to leave. Ludwick testified that after appellant ignored Sergeant Garcia and approached the house, Sergeant Garcia deployed his Taser. Ludwick recalled appellant turning toward Sergeant Garcia and moving "with a purpose" towards him. Ludwick testified that appellant "was threatening" Sergeant Garcia, but that appellant then grabbed the Taser "leads" and "he got tased."

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends the evidence was insufficient to convict him of retaliation. Specifically, appellant argues the evidence was insufficient to show that he threatened Sergeant Garcia or acted with a retaliatory motive.

### A. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). "The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in

4

the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc) (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). Juries are permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The elements of retaliation under section 36.06(a)(1)(A) are: (1) the defendant (2) intentionally or knowingly (3) harms or threatens to harm (4) another person (5) by unlawful act (6) in retaliation for or on account of (7) the service or status of another (8) as a public servant, witness, prospective witness, or informant. *Cada v. State*, 334 S.W.3d 766, 770 (Tex. Crim. App. 2011); *see* TEX. PENAL CODE ANN. § 36.06(a)(1)(A). A police officer is a public servant. *See Carriere v. State*, 84 S.W.3d 753, 757 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Helleson v. State*, 5 S.W.3d 393, 395 (Tex. App.—Fort Worth 1999, pet. ref'd). "Retaliatory intent may be inferred from the accused's acts, words, or conduct." *Stewart v. State*, 137 S.W.3d 184, 188 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Dues v. State*,

5

634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982)); *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.).

The term "threatens" is not defined in the statute. *See* TEX. PENAL CODE ANN. § 36.06. The term is thus given its ordinary meaning. *See* TEX. GOV'T CODE ANN. § 311.011(a) (West, Westlaw through 2013 3d C.S.); *Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000); *see also Schmidt v. State*, No. 07-04-0480-CR, 2006 WL 249987, at *2 (Tex. App.—Amarillo Feb. 2, 2006) (mem. op., not designated for publication) (noting "threatens" is undefined and given its plain and ordinary meaning), *rev'd on other grounds*, 232 S.W.3d 66, 69 (Tex. Crim. App. 2007); *Hayes v. State*, No. 14-00-00299-CR, 2001 WL 930874, at *3 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, no pet.) (mem. op., not designated for publication) (same). Black's Law Dictionary defines "threat" as "[a] communicated intent to inflict harm or loss on another or another's property." BLACK'S LAW DICTIONARY 1618 (9th ed. 2009). Nothing in the statute or in Black's definition limits a threat to verbal communication. *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(A); BLACK'S LAW DICTIONARY 1618. Where relevant, we address nonverbal communication, such as body language.

## B.   Discussion

Appellant first asserts the evidence fails to show that he harmed or threatened to harm Sergeant Garcia because he neither vocalized a threat nor physically assaulted him. It is undisputed that appellant did not hit Sergeant Garcia. Although appellant did not vocally articulate a threat, we do not read the statute to require the "threat of harm" be communicated by verbal communication. For example, a person drawing his finger

6

across his neck with the intent of threatening an onlooker communicates a non-verbal threat. Here, a rational jury could find that grinning and walking "with purpose" and clenched fists towards Sergeant Garcia was a threat by unlawful act. *See Johnson*, 364 S.W.3d at 293–94.

Appellant next asserts the evidence fails to show that he acted with a retaliatory motive. Appellant again emphasizes that he did not say anything when he advanced on Sergeant Garcia. Appellant argues, "Without any words accompanying those actions the jury is left with mere suspicion and speculation." We disagree because words are unnecessary to prove retaliatory intent; a jury can infer it from the accused's acts and conduct. *See Stewart*, 137 S.W.3d at 188; *In re B.P.H.*, 83 S.W.3d at 407. The jury heard that appellant turned and advanced "with purpose," clenched fists, a "red" face, and in a "threatening" manner towards Sergeant Garcia in response to Sergeant Garcia deploying the Taser.

Appellant recommends that we interpret this determined advance as a reaction to the Taser's electricity, but Sergeant Garcia's and Ludwick's testimony show one Taser wire was unconnected at that time. During oral argument, appellant referenced evidence that he could have been electrocuted with an unconnected wire, but appellant did not present this argument or evidence at trial. Regardless, appellant's response once he closed the electrical circuit did not resemble his grinning and fist-clenched advance on Sergeant Garcia. A rational jury could find appellant grinned because the Taser seemingly failed, advanced on Sergeant Garcia for attempting to stun him, and was electrocuted after he grabbed the Taser wire. Appellant also suggests his threatening

7

approach was just a reaction to being struck by the Taser barb or constituted angry gesticulations directed toward Sergeant Garcia. But, viewing the evidence in the light most favorable to the verdict, we conclude the jury could rationally find appellant's conduct was focused, determined, and communicated a threat of harm by unlawful act in response to Sergeant Garcia deploying his Taser. *See Johnson*, 364 S.W.3d at 293–94; *Hooper*, 214 S.W.3d at 14; *see also* TEX. PENAL CODE ANN. § 36.06(a)(1)(A).

Appellant relies on *In re M.M.R.*, 932 S.W.2d 112, 115 (Tex. App.—El Paso 1996, no pet.) and *Riley v. State*, 965 S.W.2d 1, 2 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) for the principle that evidence in a retaliation case must show more than that a public servant is harmed while discharging official duties. In *In re M.M.R.*, a supervisor in a juvenile half-way house attempted to intervene in a fight between the juvenile defendant and another by grabbing the defendant and taking "him to the floor." *In re M.M.R.*, 932 S.W.2d at 114. The *In re M.M.R.* Court held that the evidence was insufficient to prove a retaliatory intent because the defendant hit the supervisor "not for the purpose of retaliating against [him] for restraining him, but in order to escape and continue" fighting. *Id.* at 115.

In *Riley*, the defendant, a prison inmate, hit a guard while the guard secured him. 965 S.W.2d at 2. The *Riley* Court held that the defendant's assault was not retaliatory. *Id.* Expanding on *In re M.M.R.*, the *Riley* Court held that evidence proving retaliation must show that "the harm inflicted resulted from a retributive attack for duties *already performed*." *Id.* (emphasis added). *Riley* did not explain how far in the past the performance must be to be "already performed," but the same appellate court has since

8

concluded that a retaliatory act can arise in a single encounter between an arresting officer and the accused. *See Crecy v. State*, No. 01-99-00386-CR, 1999 WL 1208518, at *2 (Tex. App.—Houston [1st Dist.] Dec. 16, 1999, pet. ref'd) (mem. op., not designated for publication) (finding retaliatory intent where the defendant "made threats almost simultaneously with his arrest" that he was going to "hunt [the arresting officers] down and kill" them if they took him to jail); *see also In re K.A.*, 420 S.W.3d 172, 176 (Tex. App.—Amarillo 2012, no pet.) (adopting *Riley* but holding the evidence sufficient to prove a retaliatory motive where juvenile threatened to stab a juvenile detention officer with a pencil in response to the officer requesting the juvenile relinquish the pencil).

Several appellate courts have declined to follow *Riley*, holding that a retaliatory act can be contemporaneous with the public servant's performance of the servant's official duties. *See, e.g., Nandin v. State*, 402 S.W.3d 404, 408 (Tex. App.—Austin 2013, pet. ref'd) ("We find nothing in section 36.06(a)(1)(A) that requires a defendant's action be in response to duties 'already performed' by a public servant."); *Wright v. State*, 979 S.W.2d 868, 869 (Tex. App.—Beaumont 1998, pet. ref'd) ("The penal statute does not require the threat or harm be in retaliation for *past* service as a public servant."); *Stafford v. State*, 948 S.W.2d 921, 924 (Tex. App.—Texarkana 1997, pet. ref'd) (holding evidence sufficient where defendant threatened police officer upon being arrested and transported in police unit); *McCoy v. State*, 932 S.W.2d 720, 724 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding defendant's assault of police officer while officer arrested him was retaliatory). This Court has followed these cases. *See Garcia v. State*, No. 13-05-00291-CR, 2006 WL 1493250, at *3 (Tex. App.—Corpus Christi June 1, 2006, no pet.) (mem. op., not

9

designated for publication) (applying *Stafford* to hold that retaliatory act can arise in "single meeting."). Under this approach, appellant's aggressive response to Sergeant Garcia's Taser is sufficient to prove retaliatory intent beyond a reasonable doubt. *See Nandin*, 402 S.W.3d at 408 (holding evidence was sufficient to prove retaliatory intent because it showed defendant using an "aggressive posture, putting up his fists, and advancing towards the deputy who then pepper-sprayed him in the face," which prompted defendant to charge deputy and try to hit him); *McCoy*, 932 S.W.2d at 724 (holding defendant's act of hitting and attempting to kick an arresting officer in response to being arrested was sufficient to prove retaliatory intent).[3]

Viewing the evidence in the light most favorable to the jury's verdict, we conclude the jury was rational in finding all the elements of retaliation beyond a reasonable doubt. *See Johnson*, 364 S.W.3d at 293–94. We overrule appellant's first issue.

## III. EXCLUDED WITNESS

By his second issue, appellant argues the trial court erred in refusing to admit the testimony of Paul Hoang, M.D. The State objected to Dr. Hoang's testimony, anticipating

---

[3] Moreover, the evidence is sufficient even under the stricter approach taken in *Riley*. Unlike *Riley* and *In re M.M.R.*, appellant did not harm or threaten to harm Sergeant Garcia in an attempt to escape from Sergeant Garcia. *Cf. Riley v. State*, 965 S.W.2d 1, 2 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *In re M.M.R.*, 932 S.W.2d 112, 115 (Tex. App.—El Paso 1996, no pet.). Had that been appellant's intent, he would have accepted Sergeant Garcia's repeated invitations to leave the property. This is not a situation in which appellant struck Sergeant Garcia during a scuffle or in the heat of the moment. Appellant was several feet away and could have run; instead, he looked down at the unconnected Taser wire, grinned, continued his advance on Campbell, stopped, faced Sergeant Garcia, and walked towards him grinning and with clenched fists. Under *Riley* and *In re M.M.R.*, the evidence is sufficient to prove retaliatory intent beyond a reasonable doubt. *See In re K.A.*, 420 S.W.3d 172, 176 (Tex. App.—Amarillo 2012, no pet.) (holding evidence was sufficient to prove retaliatory motive under *Riley* where juvenile threatened to stab juvenile detention officer with a pencil); *see also Crecy v. State*, No. 01-99-00386-CR, 1999 WL 1208518, at *2 (Tex. App.—Houston [1st Dist.] Dec. 16, 1999, pet. ref'd) (mem. op., not designated for publication) (distinguishing *Riley* and *In re M.M.R.* because defendant threatened to hunt down and kill arresting officers upon being arrested but "not simply [as] part of resisting arrest, restraint, or transport to jail.").

10

his description of appellant's physical condition, which the State argued was "not relevant as to the charges that are before this Court and this jury . . . ." Defense counsel insisted the testimony would show that appellant lacked the "physical attributes of being able to attack someone" and undermined the State's witnesses who portrayed appellant as a "big strapping man . . . ." The trial court ruled "that the doctor's testimony about Mr. Dodds'[s] physical condition on [the day of the incident] is not relevant to the issues of this case" because retaliation does not require "the actual execution of physical assault or the ability to execute a physical assault, it's the impression of the people who were involved . . . ."

In an offer of proof, Dr. Hoang testified that he had overseen appellant's care for over ten years and that eight months before the incident between appellant and Sergeant Garcia, he had recorded on appellant's "chart" that appellant was "severely disabled." When asked by defense counsel about appellant's posture and stance, Dr. Hoang said appellant has "always been lethargic," had a pained walk or limp accompanied by crouching, and appeared weak and in severe pain.

## A.    Standard of Review

We review the trial court's decision to exclude Dr. Hoang's testimony under an abuse of discretion standard. *See Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (en banc). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). "[W]e uphold the trial court's ruling if it is correct under any theory of

11

law and as long as the trial court's ruling is within the zone of reasonable disagreement." *Gonzalez v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003).

At issue is whether Dr. Hoang's testimony was relevant. "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by [the Texas Rules of Evidence], or by other rules prescribed pursuant to statutory authority." TEX. R. EVID. 402. "Evidence which is not relevant is inadmissible." *Id.* "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401.

## B. Discussion

Appellant does not allege that he was incapable of walking with clenched fists and a grin; rather, appellant claims that Dr. Hoang's testimony "would go to whether it was reasonable for [the State's witnesses] to perceive him to be threatening [Sergeant] Garcia." Retaliation, however, does not require the threatened audience be intimidated. *See* TEX. PENAL CODE ANN. § 36.06; *Cada*, 334 S.W.3d at 770. Whether it is reasonable to fear the person intentionally or knowingly communicating a threat is irrelevant to the actor's intent and conduct. *See* TEX. PENAL CODE ANN. § 36.06; *Cada*, 334 S.W.3d at 770.

Dr. Hoang was not present at the time of the incident and did not witness appellant's physical state or conduct that day. His testimony suggesting that appellant looked more pained or less threatening when he walked toward Sergeant Garcia does not make more or less probable the fact that appellant intentionally or knowingly took his

12

steps with clenched fists. *See* TEX. R. EVID. 401 (defining relevant evidence); TEX. PENAL CODE ANN. § 36.06 (providing retaliation elements); *Cada*, 334 S.W.3d at 770 (same). Moreover, as the trial court explained, the actor's ability to execute the threat is irrelevant to retaliation. *See* TEX. PENAL CODE ANN. § 36.06; *Cada*, 334 S.W.3d at 770. The trial court's decision was within the zone of reasonable disagreement, and we overrule appellant's second issue. *See Gonzalez*, 117 S.W.3d at 839.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, appellant argues he received ineffective assistance of counsel because trial counsel allegedly "failed to cross examine any of the State's witnesses concerning their motivations to lie about Mr. Dodds'[s] actions."

### A. Standard of Review

To prevail on his ineffective assistance claim, appellant must show: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *Jaynes*, 216 S.W.3d at 851. The record must contain evidence of counsel's reasoning, or lack thereof, to rebut the presumption. *Moreno v. State*, 1 S.W.3d 846, 865 (Tex. App.—Corpus Christi 1999, pet. ref'd). We review the totality of representation

13

rather than isolated instances in determining whether trial counsel was ineffective. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Lopez*, 343 S.W.3d at 143.

We assume trial counsel's strategy was reasonable unless a reasonable strategy cannot be imagined or if counsel's performance "was so outrageous that no competent attorney would have engaged in it." *Andrew v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). To the extent appellant relies on evidence outside the record, we conclude he failed to overcome with record evidence the presumption that trial counsel's performance fell within the wide range of reasonable professional assistance. *See Moreno*, 1 S.W.3d at 865 (requiring record evidence of counsel's reasoning or lack thereof); *see also Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) ("Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped.").

## B.    Discussion

Appellant's trial counsel thoroughly contested the State's motions in limine, effectively conducted voir dire, aggressively cross-examined the State's witnesses, made proper objections with favorable rulings, examined a defense witness, made an offer of proof with the testimony of two witnesses whom the trial court disallowed to testify, moved for a judgment notwithstanding the verdict, delivered a compelling closing argument, and presented a viable defensive theory. Appellant nevertheless argues that several alleged deficiencies deprived him of constitutionally effective counsel.

14

Appellant appears to argue that his trial attorney was constitutionally deficient for failing to inquire "into the background of any of [the State's] witnesses, their relationships to each other, and how that might influence their testimony in an effort to convict Mr. Dodds." A review of the record reveals the opposite. The State had four witnesses: Zuniga, Longoria, Sergeant Garcia, and Ludwick. In closing argument, defense counsel emphasized that the witnesses knew each other and had jointly prepared their testimony. Appellant does not elaborate on how Zuniga's and Longoria's backgrounds or relationship to each other or with their neighbors tainted their testimony; instead, appellant focuses on Ludwick and Sergeant Garcia.

Appellant incorrectly claims his attorney failed to cross-examine Ludwick "about why he had only come forward as a witness" shortly before trial. Appellant overlooks trial counsel's first question: "Mr. Ludwick, when did you come forward and give this statement to the District Attorney's Office?" Ludwick answered that he appeared as a witness one week before trial. Appellant implies that Ludwick's late appearance shows that he was biased for the State, but such speculation is unsupported by the record. *See Menefield*, 363 S.W.3d at 592–93; *Moreno*, 1 S.W.3d at 865. To the extent appellant suggests Ludwick's relationship with Sergeant Garcia motivated him to testify favorably for the State, trial counsel inquired into that relationship. Ludwick denied being friends with Sergeant Garcia, but trial counsel noted that Ludwick had given Sergeant Garcia a ride in his vehicle on the preceding day.

Appellant also incorrectly claims that defense counsel "failed to question the State's principal witnesses about how they all met with the District Attorney's office to

15

prepare their testimony, and whether discussing their testimony together in any way tainted their memories of the events." This assertion is bold given that trial counsel repeatedly asked Zuniga, Longoria, and Sergeant Garcia about their meeting at the district attorney's office and preparing their testimony, and trial counsel emphasized this point in closing argument.

Appellant contends trial counsel was ineffective for not questioning the State's witnesses "to any degree about whether their perceptions of Mr. Dodds's actions . . . were overblown, unrealistic[,] and/or incredible." Contrary to appellant's assertion, trial counsel thoroughly challenged the witnesses' credibility and testimony. Moreover, as discussed *supra*, their perceptions of appellant's conduct was irrelevant, and counsel was not deficient for not further eliciting irrelevant information. *See* TEX. PENAL CODE ANN. § 36.06; TEX. R. EVID. 401; *see also Moore v. State*, No. 07-010-0477-CR, 2002 WL 31627079, at *2 (Tex. Crim. App. Nov. 22, 2002) (not designated for publication) (holding defense counsel was not ineffective for not eliciting inadmissible testimony that the trial court had excluded in a motion in limine).

Appellant faults trial counsel for not inquiring into "several incidents in [Sergeant Garcia's] past history as a law enforcement officer that might cause a jury to question his credibility." Trial counsel was not deficient in this regard because specific instances of a witness's conduct "may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." TEX. R. EVID. 608(b). Further, the instances are not included in the record. *See Moreno*, 1 S.W.3d at 865 (requiring record evidence of counsel's reasoning or lack thereof). Neither was trial counsel deficient for not inquiring

16

into the specific instances of Campbell's employment history.  *See* Tᴇx. R. Eᴠɪᴅ. 608(b); *Moreno*, 1 S.W.3d at 865; *see also Moore*, 2002 WL 31627079, at *2 ("Exclusion of inadmissible testimony does not render defense counsel's performance ineffective.").

Lastly, appellant complains, "Although trial counsel questioned [Sergeant] Garcia about when he actually wrote the [police] report, he made no effort" to show the report was a response to appellant's civil suit against the city for Sergeant Garcia's conduct in the altercation.  That information, however, was excluded by the trial court.  Despite trial counsel's resistance, the trial court granted the State's motion in limine, precluding inquiries into Sergeant Garcia's or the State's motives in prosecuting appellant.  The trial court told defense counsel, "[Y]ou can go into the timing of the report but you can't go into his motive for doing it."  Appellant characterizes trial counsel as deficient for following the trial court's ruling.  We disagree.  Trial counsel's decision to not elicit testimony or request to elicit testimony that the trial court had previously ruled inadmissible fell within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *Jaynes*, 216 S.W.3d at 851; *see also Moore*, 2002 WL 31627079, at *2.

In reviewing the foregoing assertions, we conclude that appellant has failed to present evidence sufficient to overcome the strong presumption that trial counsel's performance fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142; *Jaynes*, 216 S.W.3d at 851.  We overrule appellant's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 25th
day of November, 2014.

18